# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| PAUL J. DESFOSSES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: CV-08-273-EJL-LMB |
| | ) | |
| - vs - | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| ADRIENNE K. KELLER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Currently pending before the Court is: (1) Defendants's Motion to Substitute Party (Docket No. 3); and (2) Defendant's Motion to Dismiss (Docket No. 5). By way of summary, Defendant seeks an Order substituting the United States for Defendant, and a dismissal of the action in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (5), (6) and Rule 56(b). The Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided without oral argument. Local Rule 7.1(b). Having carefully reviewed the record, studied the briefs of the parties and otherwise being fully advised, the Court enters the following Report and Recommendation, and Order.

# I.  BACKGROUND

The underlying action is related to litigation brought by the United States against Plaintiff in 2004 regarding a mining operation he ran.  *See United States v. Desfosses*, CV-04-330-EJL.  In that case, the United States sought declaratory and injunctive relief against Plaintiff for having unlawfully conducted mining and mill operations in the Targhee National Forest.  The basis of the government's claim was that Plaintiff had caused severe environmental degradation by conducting putative mining operations in violation of federal law.  The United States further complained that while Plaintiff did, in fact, have a 1986 approved operating plan, he had violated it causing further environmental damage.  The United States prevailed on summary judgement.  Mr. Desfosses' appeal to the Ninth Circuit was rejected, and judgement against him was affirmed.

This is the second action filed by Plaintiff against Defendant with essentially the same factual allegations.  *See Desfosses v. Keller*, CV-02-469-EJL.  Judge Lodge, the presiding judicial officer in that action, dismissed Plaintiff's claim without prejudice for his failure to affect proper notice under the Federal Tort Claims Act.  *Id.*  Plaintiff has failed to re-file that claim with proper notice, and the time to do so has expired.

By way of summary, Plaintiff alleges a grand criminal conspiracy involving the Church of Jesus Christ of Latter-day Saints, several IRS officers, Idaho Democratic party officials and politicians, including former U.S. Representative Richard H. Stallings, former Idaho Supreme Court Justice Robert C. Huntley, former United States Attorney Thomas E. Moss, and Chief United States District Judge B. Lynn Winmill.  Plaintiff claims the conspirators worked together in an effort to "destroy Congressman George Hansen."  Plaintiff further posits that the alleged conspirators, including Defendant Adrienne Keller, engaged in actions intended to silence

Plaintiff's efforts in exposing the "Felony Criminal Conspiracy involving Vote Fraud and Privacy

Act violations . . . ." *Complaint*, p. 2 (Docket No. 1).  Specifically, Plaintiff alleges that as a result

of his whistle-blowing efforts, Defendant, in her position as District Ranger for the U.S. Forest

Service, acted "to coerce Plaintiff's silence and cooperation with the corruption coverup efforts to

protect . . . Richard Stallings." *Id.* at 3.

      With regard to specific factual allegations, Plaintiff claims that Defendant Keller:

1.     Cause[d] Plaintiff's Approved Plan Of Operations to be capriciously ignored and challenged;

2.     Seize[d] and [stole] Plaintiff's mine operation equipment . . . ;

3.     Slander[ed] Plaintiff and [told] falsehoods and lies concerning Plaintiff and his mining operations in an attempt to thwart Plaintiff's mining operations and develop coercive threats against the Plaintiff to secure Plaintiff's cooperation in the corruption cover-up of Richard Stalling's involvement in felony criminal activities.

*Id.*  Plaintiff is proceeding under four causes of action: (1) Violation of his Substantive Due

Process rights; (2) Violation of his Constitutional right to Equal Protection; (3) Slander; and (4)

Tortuous interference with economic relations.  *Id.*

## II.  DISCUSSION

      In addition to her Motion to Substitute the United States as the Defendant in Plaintiff's

common law tort claims, Defendant argues that dismissal of all of Plaintiff's claims is warranted

on several grounds.  *Memorandum in Support of Motion to Dismiss* (Docket No. 5).  Initially,

Defendant argues that the complaint must be dismissed for improper service under Federal Rule of

Civil Procedure 4.  *Id.*  Defendant also argues that her status as a public official bars Plaintiff's

action the grounds of qualified immunity.  Defendant also argues that a dismissal must issue under

Rule 12(b)(6), for Plaintiff's alleged failure to adequately set forth even a minimal factual and

REPORT AND RECOMMENDATION  **- 3 -**

legal basis for his claims. *Id.* Finally, Defendant argues that the Court lacks subject matter jurisdiction for Plaintiff's failure to comply with the Federal Tort Claims Act ("FTCA") with regard to his common law tort claims. *Id.*

## A.      Motion to Substitute

Defendant Keller seeks to replace herself with the United States of America as the sole defendant in Plaintiff's common law tort claims. As previously noted, Plaintiff alleges two *Bivens* claims[1] against Defendant and two common law tort claims. Defendant's *Motion to Substitute* concerns only Plaintiff's common law tort claims.

The acting United States Attorney for the District of Idaho, D. Mark Haws, has filed a certification that Defendant was acting within the scope of her employment with the United States Forest Service when the conduct in question occurred. Defendant argues that under the FTCA, the only proper defendant in a tort claim against an employee or agency of the United States for acts or omissions made within the course and scope of employment is, in fact, the United States. Defendant further asserts that Plaintiff's tort claims are within the scope of the FTCA. Thus, Defendant argues that Plaintiff's action should be deemed as against the United States of America. *See* 28 U.S.C. §§ 2679(a), (b) and (d).[2]

---

[1]   "A *Bivens* action is an action that allows an individual to sue a federal employee for damages for violating an individual's Constitutional rights." *Mayben v. Barnes*, 290 F. Supp. 2d 1169, 1172 (E.D. Cal. 2003).

[2]   28 U.S.C. § 2679(b)(1) provides:

The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter

Plaintiff alleges, without explanation, specificity, justification or substantiation, that Defendant was not acting within the scope of her official responsibilities and duties as an agent of the United States of America or that her employer directed her to commit the acts of which he complains. Plaintiff states, rather, that Defendant "possess a clear bias and hatred against Plaintiff due to Plaintiff having exposed the felony criminal activities of Richard Stallings . . . ." *Complaint*, p. 5 (Docket No. 1).

The undersigned has fully reviewed the entire record and the parties' submissions and finds, and thus concludes, that Defendant has accurately stated the requirements of 28 U.S.C. § 2679. The Government, in response, has filed proper certification to establish that Ms. Keller was operating withing the scope of her employment as required by § 2679. Plaintiff has failed to provide any evidence to establish that Ms. Keller's conduct and actions were not within the scope of her employment as an agent of the United States. Accordingly, with all the foregoing in mind, Defendant's *Motion to Substitute Party* (Docket No. 3) should be granted with regard to Plaintiff's common law tort claims: slander; and tortuous interference with economic relations.

## B.   Qualified Immunity

It is well settled that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). This immunity is

---

against the employee whose act or omission gave rise to the claim or against the estate of such employee . . . .

designed to protect public officials from "undue interference with their duties" and to prevent threats of liability from disabling important government functions.  *Harlow*, 457 U.S. at 806. Contrarily, the official may be held personally liable if they knew or should have known that they was violating Plaintiff's clearly-established federal rights.  *Id*.  The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The threshold question prior to considering whether a qualified immunity defense should be applied is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show [Defendant's] conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  The court is to first inquire whether a constitutional right was violated as alleged in the complaint.  *Id*.  If no constitutional right was violated, the inquiry ends, and Plaintiff's case should be dismissed.  *Id*.

However, if, while viewing the alleged injuries in a light most favorable to Plaintiff, a constitutional right appears to have been violated, the court then proceeds to the next step, which is to inquire whether the right was clearly established.  *Id*.  To determine whether a right was clearly established, the trial court looks to Supreme Court and Ninth Circuit jurisprudence existing at the time of the alleged act.  *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996) (internal citation omitted).  In the absence of binding precedent, the court looks to other circuit court and District court decisions to ascertain if the law is clearly established.  *Id.* (internal citation omitted).

 The inquiry of whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. at 201. For the law to be clearly established, "[t]he contours of the right" must be sufficiently clear that a

reasonable official would understand that his conduct violates that right. *Anderson v. Creighton*, 483 U.S. 635 (1987). It is not necessary that the "very action in question has previously been held unlawful, . . . but it is to say that in the light of preexisting law the unlawfulness must be apparent" to the official. *Id*. State officials are not charged with predicting the future course of constitutional law, *Ostlund v. Bobb*, 825 F.2d 1371, 1374 (9th Cir. 1987), nor are they held to the standards of legal scholarship normally associated with law professors and academicians, *Ward v. County of San Diego*, 791 F.2d 1329, 1332 (9th Cir. 1986).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Summary dismissal is appropriate when "the law did not put the [defendant] on notice that [her] conduct would be clearly unlawful." *Id.* at 195.

"The defendant bears the initial burden of coming forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question. Thereafter, the burden shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he was under an affirmative duty to refrain from such conduct." *Gardenhire v. Schubert*, 205 F.3d 303, 311(6th Cir. 2000). Finally, while the court "must take all the factual allegations in the complaint as true, [the court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Here, in the instant action, Plaintiff claims that Defendant violated his constitutional right to substantive due process and that Defendant acted to cause a denial of his constitutional right to

equal protection of the law.  *Complaint*, pp. 8–12 (Docket No. 1).  In response, Defendant asserts

that Plaintiff's complaint fails to state a cognizable substantive due process claim or equal

protection claim.  *Memorandum in Support of Motion to Dismiss*, pp. 10–12 (Docket No. 5).

Accordingly, without a cognizable claim, Defendant seeks summary dismissal of Plaintiff's

constitutional claims.  Finally, Defendant argues that should dismissal of the constitutional claims

occur, the remainder of Plaintiff's claims should be dismissed for lack of jurisdiction.  *Id*. at

13–14.

      Plaintiff objects to Defendant's Motion, arguing that "Defendants' Motion to Dismiss Or

For Summary Judgment is, in reality, intended by Defendant to facilitate the continuation of the

political corruption coverup conspiracy intended to protect from exposure the criminal action of

former Idaho Democrat Party State Chairman and former Idaho Second District Congressman

Richard Stallings."  *Objection to Defendant's Motion*, pp. 1–2 (Docket No. 12).  In his *Objection*

and subsequent *Memorandum in Support of Objection*, Plaintiff submits that Defendant's actions,

which gave rise to Plaintiff's claims, were part of a "more than three decades long effort[] of the

Richard Stallings' initiated Criminal Conspiracy Cover Up to coerce Plaintiff's cooperation in the

Political Coverup Conspiracy-or to effect reprisals against the Plaintiff should Plaintiff refuse to

cooperate in the Corruption Cover up Conspiracy."

      Plaintiff, however, fails to respond directly to Defendant's arguments regarding summary

judgement, but does re-allege that he is being victimized for allegedly "blowing the whistle" on

Richard Stallings.  Further, Plaintiff intimates that the civil lawsuit initiated by the United States

for his mining practices was used as a tool to silence his whistle-blowing.  In sum, it appears that

Plaintiff asserts that Defendant's actions leading up to the government's initiation of a civil suit

against him (*United States v. Desfosses*, et al., Case No. CV-04-330-EJL) through the entry of judgment in favor of the United States in that action, were in violation of Plaintiff's constitutional rights.

### 1.      Plaintiff's Substantive Due Process Claim

According to Defendant, Plaintiff has failed to assert an essential element of his due process claim. *Id*. Namely, Defendant puts forward that Plaintiff has failed to allege a depravation of any "constitutionally protected life, liberty, or property interest[s]." *Id*. As such, Defendant calls for dismissal of Plaintiff's Due Process claim. *Id*. Defendant further argues in her *Reply to Plaintiff's Objection* that "[t]he objection does not provide any evidence or legal authority rebutting the arguments made in the motion." *Defendant's Reply to Plaintiff's Objection* (Docket No. 13).

The Ninth Circuit Court of Appeals has long held that a substantive due process claim is "cognizable only if there is a recognized liberty or property interest at stake." *Schroeder v. McDonald*, 55 F.3d 454, 462 (9th Cir. 1995) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972)). Plaintiff avers that, as a result of Defendant's actions, he was deprived of his ability to conduct mining operations. At face value, these allegation could have potentially affected Plaintiff's property interests. However, it is important to note that mere allegations or conclusory assertions, unsupported by evidence placed into the record, are wholly insufficient to support Plaintiff's claims or to withstand summary dismissal.

Protected liberty interests include "the right of the individual to engage in any of the common occupations of life." *Roth*, 408 U.S. at 572 (1972). "[T]he Fourteenth Amendment's Due Process Clause includes a 'generalized' due process right to choose one's field of private

employment." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999).  However, this right to choose

one's employment "is nevertheless subject to reasonable government regulation." *Id*.  In

reviewing such claims, the Court is directed to "look to see whether the government *could* have

had a legitimate reason for acting as it did." *Wedges/Ledges of California, Inc. v. City of Phoenix*,

24 F.3d 56, 66 (9th Cir. 1994) (emphasis in original).  As will be discussed more fully below,

Defendant, in her official capacity, has been charged, by Congress, to oversee and regulate mining

operations such as those operated by Plaintiff because of the potentially serious environmental

impact of such operations.  This plainly "could be" a legitimate reason for Defendant Keller's

actions.  The evidence contained in the record supports this position.[3]  Further, all cases involving

a due process claim regarding the right to pursue a chosen profession, "all deal with a complete

prohibition of the right to engage in a calling, and not [a] sort of brief interruption . . . . *Conn*, 526

U.S. at 292 (1999).  Accordingly, Plaintiff is barred from claiming an infringement on his

constitutionally protected liberty interests.

      By way of background, a mining claim on public lands is a recognized property interest.

*Best v. Humbolt Placer Mining Co.*, 371 U.S. 334, 335 (1963).  As previously noted, however, in

order to "minimize adverse environmental impacts on National Forest System surface resources,"

Congress has directed the Forest Service administer and oversee such mining claims.  36 C.F.R. §

228.1–15.  As part of this Congressional mandate, miners, such as Plaintiff, are required to submit

proposed plans of operation and, if approved, conduct any proposed operations within the confines

---

[3]  In fact, then-Defendant Desfosses's appeal from the 2006 judgment against him, the Ninth Circuit Court of Appeals notes that "[t]he record is replete . . . with evidence of noncompliance," and further that "DesFosses's claims to the contrary are conclusory and insufficient to avoid summary judgment." *United States v. Desfosses*, No. 06-35903, Slip op. at 2 (9th Cir. Dec. 6, 2007).

of the approved plan of operations.  *Id*.  Generally, "the approval of the operating plan is the administrative action which vests the miner with the . . . property interest."  *U.S. v. Hall*, 751 F. Supp. 1380, 1382 (E.D. Cal. 1990).  However, it is important to note that Congress also directed "Forest Officers, [such as Defendant, to] periodically inspect operations to determine if the operator is complying with the regulations in . . . the approved plan of operations," and enforce various regulations.  *Id*.

In his *Complaint*, Plaintiff alleges that Defendant has violated Plaintiff's substantive due process rights by "causing a policy or custom to arbitrarily and capriciously deny Plaintiff his right to conduct mining operations under the Approved Plan of Operations for the Turquoise Mountain Mine and Mill."  *Complaint*, p. 9 (Docket No. 1).  Plaintiff further asserts that Defendant:

> (i)    caus[ed] Plaintiff's efforts to construct and maintain access to Plaintiff's mining operations as authorized by the Approved Plan Of Operations to be hindered and harassed; [and]
>
> (ii)   caus[ed] the U.S. Forest to arbitrarily and capriciously deny that Plaintiff's Mill was included in and authorized under the Approved Plan Of Operations;
>
> . . .

*Complaint*, p. 9 (Docket No. 1).  Plaintiff further alleges that Defendant caused his "Approved Plan Of Operations [to be] ignored and denied . . . ."  *Id*.  However, Judge Lodge previously concluded that "DesFosses has constructed and is maintaining structures and improvements on the Turquoise Mountain Placer No. 1 Mill Site *without an approved plan of operation*, in violation of federal laws and regulations."  *United States v. Desfosses*, No. CV-04-330, *Order* at 5–6 (D. Idaho Sept. 22, 2006) (emphasis added).[4]  Moreover, the Ninth Circuit held, on appeal, that "[a]lthough

---

[4]  Because the Court "may take judicial notice of judicial opinions and public records . . . , we include [Judge Lodge's *Order*] in[to] consideration of this case."  *See Stutzka v. McCarville*,

the Forest Service approved a plan of operations for the mine in 1986, it never approved a plan of

operations for the separate mill site."  *United States v. Desfosses*, No. CV-04-330, *Memorandum*

(9th Cir. Oct. 2, 2007).  Accordingly, there was no approved plan of operation for Plaintiff's mill

site and Defendant could not have deprived Plaintiff a right to operate such a mill when no such

right existed.

Regarding Plaintiff's mining claim, and the 1986 approved plan of operation, of which

Plaintiff claims Defendant "ignored and denied," a determination on this issue has already been

made as well.  In September 2006, Judge Lodge ruled:

> [Mr.] DesFosses has engaged in unauthorized road building, including excavation
> of earth and removal of trees and other vegetation, on the Turquoise Mountain Mine
> Placer Claim in *non-compliance with the 1986 approved operating plan*, in violation
> of federal laws and regulations; and
>
> . . .
>
> [Mr.] DesFosses is restrained and enjoined from any further mechanized activities,
> including extending and/or constructing roads, excavation of earth, trenching, mining
> and removal of trees and vegetation, on the Turquoise Mountain Mine Placer Claim
> until he submits a modified plan of operation for the Turquoise Mountain Mine
> Placer Claim to the Forest Service, obtains approval of a modified plan of operation
> from the Forest Service, and complies with the modified plan of operation as may be
> approved by the Forest Service.

*United States v. Desfosses*, No. CV-04-330, Order at 5–6 (D. Idaho Sept. 22, 2006).

Inasmuch as a prior determination has been made on this issue, Plaintiff is estopped from

arguing that Defendant unconstitutionally acted to deny access to Plaintiff's mining claim.  *See*

*Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042 (9th Cir. 2008) (" Issue preclusion prevents a party

---

420 F.3d 757, 761 (8th Cir. 2005); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th
Cir. 2006) ("[The Court] may take judicial notice of court filings and other matters of public
record.")

**REPORT AND RECOMMENDATION   - 12 -**

from relitigating an issue decided in a previous action if four requirements are met: "(1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action."); *McClain v. Apodaca*, 793 F.2d 1031 (9th Cir. 1986) (noting that it is proper for a court to examine the res judicata effect of a prior judgement arising out of the same conduct *sua sponte*).

      In the 2004 action, then-defendant Desfosses was afforded a full and fair opportunity to litigate the existence and extent of the 1986 plan of operations, which he claims now is being ignored.  The United States prevailed on all counts and a final judgment was entered and was later affirmed by the Ninth Circuit Court of Appeals.  Consequently, the undersigned finds, and thus concludes, that Plaintiff's non-compliance with the 1986 approved operating plan, in violation of federal laws and regulations, was the legal cause of the denial of "his right to conduct mining operations."

      Because Defendant is bound by the previous determination after receiving a full and fair opportunity to litigate the status of the 1986 approved plan operations, the principle of defensive non-mutual issue preclusion bars him from relitigating the issue against Defendant.  *See Blonder-Tongue Labs.*, 402 U.S. 313, 349 (1971).  It cannot be said that the facts alleged show, even when viewed in a light most favorable to Plaintiff, that Defendant's conduct violated a constitutional right.  As no constitutional right has been violated, "the inquiry ends, and Plaintiff's [Due Process Claim] should be dismissed."  *Saucier*, 533 at 201.

**REPORT AND RECOMMENDATION  - 13 -**

2.        **Plaintiff's Equal Protection Claim**

An equal protection claim can be asserted in two ways.  First, Plaintiff can allege that

"defendant acted with an intent or purpose to discriminate against the plaintiff based upon

membership in a protected class."  *See Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir.

1998) (citing *Washington v. Davis*, 426 U.S. 229, 239–40 (1976)).  In making this type of claim,

Plaintiff  "must show that [Defendant] acted with an intent or purpose to discriminate against the

plaintiff based upon membership in a protected class."  *Lee v. City of Los Angeles*, 250 F.3d 668,

686 (9th Cir. 2001).  Such protected classes are generally only racial minorities (*See e.g., Grutter

v. Bollinger*, 539 U.S. 306 (2003)) and religious groups (*See e.g., Larson v. Valente*, 456 U.S. 228,

246 (1982)), of which Plaintiff is neither.  *See Complaint* (Docket No. 1).

Plaintiff can establish an equal protection "class of one" claim by alleging that he "has

been intentionally treated differently from others similarly situated and that there is no rational

basis for the difference in treatment."  *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564

(2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004).  "To be considered

'similarly situated,' the [Plaintiff] must be *prima facie* identical in all relevant respects or directly

comparable in all material respects [to other mine operators]."  *U.S. v. Moore,* 543 F.3d 891,

896–97 (7th Cir. 2008); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (noting that to be

considered "similarly situated," persons must be alike "in all relevant respects . . . .").

Plaintiff, of course, alleges to be "similarly situated" to other mine operators in the

Caribou/Targhee National Forest.  *Complaint*, pp. 10–11 (Docket No. 1).  Plaintiff, however, fails

to complain of anyone else conducting mill operations without an approved plan of operations, or

mining operations that were found to be in non-compliance with an approved plan of operations.

REPORT AND RECOMMENDATION  - 14 -

Nor has Plaintiff complained of being treated differently than other mine operators that are subject to a court order enjoining all mechanized operations.  Plaintiff, thus, has failed to illustrate or establish that he is, in fact, "similarly situated" to other mine or mill operators in the Caribou/Targhee National Forest.  Accordingly, Plaintiff has failed to demonstrate a requisite element of an equal protection claim.

Viewing the facts in a light most favorable to Plaintiff, without a "similarly situated" class, there is no constitutional violation of Plaintiff's right to equal protection.  Again, as no constitutional right has been violated, "the inquiry ends, and Plaintiff's [Due Process Claim] should be dismissed."  *Saucier*, 533 at 201.

## C.      Summary Judgment

Defendant argues that should summary dismissal not issue due to Defendant's qualified immunity, that this action is ripe for summary judgment.  Plaintiff opposes summary judgment, though does not point to any legal basis or evidence in the record supporting his opposition.

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

An issue is "material" if it affects the outcome of the litigation.  *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975).  A material fact is

> one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.  The materiality of a fact is thus determined by the substantive law governing the claim or defense.  Disputes

> over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn*, 523 F.2d at 464 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Accordingly, "[a] mere scintilla of evidence supporting the non-moving party's position is insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Likewise, "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (citing *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995)). Further, because factual disputes are to be resolved at trial, in ruling on summary judgment motions, the Court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. Moreover, all inferences must be drawn in the light most favorable to the nonmoving party. *Id*. at 631.

The initial burden is on the moving party to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); Fed. R. Civ. P. 56(c). If the moving party meets its initial burden, the nonmoving party must "produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact

claimed to be disputed." *Steckl*, 703 F.2d at 393 (quoting *Ruffin v. County of L.A.*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

As was noted above, Plaintiff is foreclosed from relitigating issues previously decided in the 2004 action.  As all of the factually determinative issues that could give rise to a cognizable claim were previously adjudicated, there are no remaining genuine issues of material fact.  Further, as a matter of law, Plaintiff has failed to make an adequate showing on essential elements of his claims which he has the burden to place in the record.  Accordingly, while summary dismissal of Plaintiff's constitutional claims is appropriate because of Defendant's qualified immunity by way of Plaintiff's failure to claim a cognizable constitutional violation, summary judgement in favor of Defendant is equally warranted as there are no genuine issues of material fact precluding the granting of Defendant's motion for summary judgment.

**D.     Conclusion**

In reviewing the record, the Court is sensitive to the less-stringent standards to which *pro se* litigants are held.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that a *pro se* litigant's pleadings, "however inartfully pleaded," are held to the most liberal of standards because *pro se* litigants may be less capable of formulating legally-competent initial pleadings).  "*Pro se* plaintiffs cannot simply be assumed to have the same ability as a plaintiff represented by counsel to recognize the objective merit (or lack of merit) of a claim."  *Hughes v. Rowe*, 449 U.S. 5, 15 (1980).

However, while the Court is aware of Plaintiff's *pro se*, Plaintiff has been involved with the facts of this case for many years and has filed three additional lawsuits in this District on a *pro se* basis.  *See Desfosses v. Holm, et al.*, CV 89-4075-HLR; *Desfosses v. United States*, CV 98-303-

EJL; *Desfosses v. Keller*, CV 02-469-EJL.  In so doing, Plaintiff has virtually filed hundreds of pages in briefs, motions, objections, affidavits, replies, and pleadings with this Court.  In addition, Plaintiff has cited numerous legal points and authorities to support his contentions.  In doing so, Plaintiff has exhibited an understanding of the law and knows how to process his claims through the courts.

With that procedural and historical background in mind, it is apparent that Plaintiff is seeking relief from the 2006 civil judgement against him.  *See United States v. Desfosses et al.*, CV 04-330-EJL.  However, Plaintiff fails to allege any actual facts in support of his assertions beyond legal conclusions which are couched in factual allegations.  Accordingly, there is simply no evidentiary basis to support his claims.  A party who appeals from a judgment and loses on appeal cannot later get a second bite at the apple by initiating an action against a witness in the prior litigation.

Finally, with regard to the common law tort claims, with Plaintiff's constitutional claims dismissed, there are no remaining claims that invoke federal jurisdiction, and there can be no pendent jurisdiction for these state law based claims.  *See Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir.2001).  Accordingly, these claims, slander and tortuous interference with economic relations, should be dismissed along with Plaintiff's claim in its entirety.  *See id.*

/ / /

/ / /

/ / /

/ / /

**REPORT AND RECOMMENDATION   - 18 -**

## III.  RECOMMENDATION

Based on the foregoing, the Court hereby recommends that the District Court enter an

Order consistent with the following:

1.    That Defendant's *Motion to Substitute Party* (Docket No. 3) be GRANTED; and

2.    That Defendant's *Motion to Dismiss* (Docket No. 5) be GRANTED.



DATED:  **September 3, 2009**.

Honorable Larry M. Boyle
United States Magistrate Judge

**REPORT AND RECOMMENDATION  - 19 -**